In re CHRISTIAN.

(Circuit Court, W. D. Arkansas. October 3, 1897.)

1. CRIMINAL LAW—DISCHARGE FOR VOID SENTENCE—REMOVAL TO DISTRICT OF TRIAL FOR RESENTENCE.

The petitioner was indicted and convicted in the Central district of the Indian Territory, and sentenced to imprisonment at Detroit, Mich. While the marshal of that district was en route with the prisoner to the prison at Detroit, he sued out a writ of habeas corpus before the circuit court of the United States for the Western district of Arkansas, and was discharged because the sentence pronounced against him was void. Upon being rearrested under section 1014 of the Revised Statutes of the United States, he sued out a second writ of habeas corpus before the same court. *Held*, that the proceeding under section 1014 of the Revised Statutes of the United States was irregular and unauthorized, and the defendant is discharged without prejudice to the United States to take any lawful measures to have the petitioner sentenced according to law upon the verdict of guilty against him.

2. SAME—PROCEDURE.

*Held*, further, that the proper proceeding for the removal of the prisoner to the Central district of the Indian Territory was for the United States court for that district, under section 716 of the Revised Statutes of the United States, to issue its warrant, addressed to the marshal of the Western district of Arkansas, to arrest the defendant and deliver him to the marshal of the Central district of the Indian Territory to abide the action of that court.

(Syllabus by the Judge.)

Winchester & Martin and Tom W. Neal, for petitioner

W. J. Horton, U. S. Dist. Atty.

ROGERS, District Judge. The petitioner heretofore sued out from this court a writ of habeas corpus against J. P. Grady, United States marshal for the Central district of the Indian Territory. On the hearing he was discharged, but without prejudice to the right of the United States to take any lawful measures to have the petitioner sentenced in accordance with law upon the verdict of guilty against him, or to correct the judgment, if the same was, by misprision of the clerk, erroneously entered. 82 Fed. 199. Immediately upon his release the United States attorney for the Central district of the Indian Territory caused to be filed before Stephen Wheeler, United States commissioner in this district, a copy of an indictment found and duly returned by the grand jury of the Central district of the Indian Territory, and filed in the United States court at Antlers, in said district and territory, whereupon said commissioner issued a warrant for the arrest of said petitioner, and committed him to jail, under section 1014 of the Revised Statutes of the United States, to be held for trial at Antlers, in the Indian Territory. Immediately upon his commitment to the United States jail at this place by S. F. Stahl, the marshal of the Western district of Arkansas, petitioner sued out of this court this writ of habeas corpus, returnable forthwith, against the said marshal of the Western district of Arkansas. The petitioner alleges that he is unlawfully held by S. F. Stahl, in the jurisdiction of this court, by virtue of a warrant issued by Stephen Wheeler, a United States commissioner; that at the May term of 1897 of the United States court

for the Central district of the Indian Territory, at Antlers, he was indicted for perjury, and was tried and convicted, and sentenced by said court "to be imprisoned in the Detroit house of correction, at Detroit, Michigan, and to pay a fine of one dollar and costs of this action"; that the proceedings under which the warrant of arrest was issued, and under which he is held, are based on the said indictment upon which he has been tried, convicted, and sentenced, and that the warrant under which he is held is illegal, for the reason that he has been tried, convicted, and sentenced on the indictment on which the warrant was issued; and that his detention is in violation of the laws and constitution of the United States.　Upon service being made upon the marshal, he made return as follows:　That "he detains the said petitioner, William S. Christian, under and by virtue of the warrant alleged in the petition, and sets out a copy thereof."　He further states that in the United States court for the Central district of the Indian Territory, sitting at Antlers, at the May term, 1897, and on the 17th day of May, 1897, an indictment was returned against the said petitioner, charging him with perjury, and sets out a copy of the indictment; that on the 19th day of said May he was tried and convicted as charged, and thereupon was remanded to the custody of the marshal to await final sentence (and sets out a certified transcript of the proceedings and orders made in that court); that on the 20th of May, 1897, the court sentenced petitioner to be imprisoned in the house of correction at Detroit, Mich., for three years, and to pay a fine to the United States of one dollar, together with the costs of prosecution (and sets out a copy of said sentence); that thereafter a mittimus on said sentence was issued out of said court, commanding the marshal of said district to receive, safely keep, and convey the said Christian to the house of correction as aforesaid; that said petitioner afterwards applied to this court for a writ of habeas corpus to obtain his discharge from the custody of the said marshal under said mittimus, alleging the sentence and mittimus to be void; that this court made an order discharging the said petitioner from the custody of said marshal under said mittimus, and recited in said order that the discharge would be without prejudice to the right of the United States to take any lawful measures to have the petitioner sentenced according to law upon the verdict against him (and sets out a copy of that order).　He further states that on the ―――― day of June, 1897, there was filed before said Stephen Wheeler, United States circuit court commissioner for the Western district of Arkansas, a certified copy of said indictment upon which said warrant was issued, and thereupon a motion for a warrant of removal of the said petitioner to the said Central district of the Indian Territory for further proceedings in the said United States court for said Central district of the Indian Territory upon said indictment was filed and pending in this court.　The respondent further shows:　That on the 19th day of June, 1897, there was issued out of the United States court for the Central district of the Indian Territory a temporary commitment for the said Christian upon said order so made as aforesaid by said court on the 19th day of May, 1897, remanding the said petitioner to the custody of said marshal for said Central district to await final sentence upon said verdict, a certified copy of which was attached thereto, and that further,

on the said 19th day of June, 1893, there was issued out of said court for said Central district a bench warrant for the arrest of the said William S. Christian (and attached a copy of said bench warrant). That on the 13th of July, 1897, and before the filing of said return of the marshal, the United States district attorney for the Central district of the Indian Territory filed a motion in this court in which he states that at the May term, 1897, of said court for the Central district of the Indian Territory, sitting at Antlers, petitioner was duly tried by a jury upon an indictment for the crime of perjury, which indictment had been previously found in said court, said court having competent jurisdiction of said offense and of the person of said petitioner, and, upon a trial upon said indictment, was found guilty as alleged; that at the same term of said court he was sentenced by the court to imprisonment in the Detroit house of correction, at Detroit, Mich., for the term of three years, and to pay a fine of one dollar, and all costs of said cause; that on the ———— day of June, 1897, said petitioner filed his petition for a writ of habeas corpus before this court, which said writ was by the court granted, and said prisoner discharged from the custody of said J. P. Grady, United States marshal for the Central district of the Indian Territory, but without prejudice to the right of the United States to have the petitioner sentenced in accordance with law upon the verdict against him, all of which more fully appears in the record and proceedings herein. And he prayed in his motion that this court make an order remanding the petitioner to the custody of the marshal of the Western district of Arkansas, and for his removal to the Central district of the Indian Territory, to be dealt with by the United States court for the Central district of the Indian Territory in conformity with law upon the verdict against him. Upon the trial of the cause before the court the petitioner introduced the receipt of the clerk of the United States court for the Central district of the Indian Territory for one dollar, in payment of the fine assessed against him on the 20th of May, 1897; and a complete transcript of the record of the United States court for the Central district of the Indian Territory in the perjury case referred to was offered in evidence, and also the record of the previous habeas corpus case. There is really no dispute about the facts in this case, and they sufficiently appear, from what has already been stated supra, more fully than is ordinarily necessary.

Petitioner now insists that section 1014 of the Revised Statutes of the United States applies only to persons who are removed from one jurisdiction to another *for trial*, and that, he having already been *tried*, the commissioner had no power to commit him under that section of the statute, and that this court has no authority of law to make an order for his removal to the Central district of the Indian Territory to await the sentence of said court upon the verdict heretofore rendered against him. On the other hand, the United States insists that whether there is authority, under section 1014 of the Revised Statutes of the United States, for his removal to the Indian Territory, or not, petitioner now being before the court on habeas corpus, under section 761 of the Revised Statutes of the United States, and the court being advised of the fact that he has been convicted of the crime of perjury

in another jurisdiction, and has not been sentenced as the law directs, it should, under the latter section, make an order requiring the marshal of this district to surrender petitioner to the proper authorities in the Indian Territory to await the judgment of that court. Both questions have been exhaustively argued and carefully considered.

For a hundred years the United States have had the power to apprehend and punish offenders against their laws. It is indeed remarkable that at this day the method of apprehending and removing persons who have been convicted of crime, and subsequently escape, either before or after sentence, into another district, to the district where they have been tried and convicted, should still be in doubt; but a careful research has not disclosed a single reported case decisive of the question by any court. Cases have been found and action had by the department of justice and the judges, but no court has decided it, so far as I know. In Fanshawe v. Tracy, 4 Biss. 497, Fed. Cas. No. 4,643, Judge Drummond says, in discussing the nature of contempt:

"It [contempt] is not a crime, in one sense, but it partakes of the nature and character of a crime; and I do not see why, if a man is imprisoned for a contempt of a court of the United States, and breaks jail and escapes into another state, he cannot be arrested and returned to his imprisonment under the authority of the United States."

The questions, however, are: How arrested? By whom? On what showing shall the warrant issue, and under what statute, and by whom shall it be issued, and who shall execute it? I find the above passage cited in Corbin v. Boies, 34 Fed. 699. I have had no access to 4 Biss. 497, Fed. Cas. No. 4,643, but I take it that Judge Drummond has not answered the questions suggested. It is quite probable that they were not before him. In 2 Moore, Extrad. §§ 535–541, inclusive, will be found an interesting discussion of the general subject of removal of offenders against the laws of the United States from the district where found to the district where the offense was committed, for trial; but no adjudicated case is found, decisive of the questions stated supra. It will be remembered that Christian is not a fugitive from justice. The United States brought him, under a void sentence, into this state and district, en route to the penitentiary. He has remained here because he was held by this court pending the proceedings on habeas corpus. This, therefore, is not a case under the extradition laws, even if it could be held that they apply to persons offending against the laws of the United States while remaining in the United States. 2 Moore, Extrad. § 540. Nor is the petitioner to be removed for trial, for he has already been tried and convicted, and an unauthorized sentence imposed upon him. The practice under section 1014 of the Revised Statutes of the United States seems settled. 2 Moore, Extrad. p. 858, § 540; Horner v. U. S., 143 U. S. 207, 12 Sup. Ct. 407. I have not found any case where that section has been held to be authority for removing a party for any other purpose than for trial. In the Case of Oaksmith, 11 Op. Attys. Gen. U. S. 127, Mr. J. Hubley Ashton, acting attorney general, held that, under that section, Oaksmith, who had been convicted and sentenced in the district court of Massachusetts, and had escaped, could be removed to Massachusetts. He cites no authority to support the opinion, and does not discuss the

question. It does not appear that his opinion was followed in that case, nor has it been adopted by any one else, so far as I can find. I do not consider the opinion on that precise point sound. 2 Moore, Extrad. § 504 et seq. I am of the opinion that section 1014 of the Revised Statutes of the United States was never intended to apply to a case like this, and that the action had before Commissioner Wheeler was irregular and unauthorized.

The other question presented, as to what course the court should pursue under section 761, Rev. St. U. S., remains. Section 761 is as follows:

"The court, or justice, or judge, shall proceed in a summary way to determine the facts of the case, by hearing the testimony and arguments, and thereupon to dispose of the party as law and justice require."

Under this section a great many cases have arisen. I have, however, been unable to find any case where a court or judge has, under similar facts to those stated supra, ever made any order removing a party from the district where the writ was issued to the district where the offense was committed. Medley, Petitioner, 134 U. S. 173, 10 Sup. Ct. 384, was a case of this sort. Medley was convicted of murder in Colorado by a court of competent jurisdiction, but sentenced under a law enacted after the commission of the crime, which changed materially the punishment. Medley sued out a writ of habeas corpus before the supreme court of the United States. The court held the law under which he was sentenced ex post facto, and, as applied to that case, unconstitutional. Mr. Justice Miller, delivering the opinion of the court, said:

"If this were a writ of error to the supreme court of Colorado, as Kring's Case was a writ of error to the supreme court of Missouri, our duty would be plain, namely, to reverse the judgment for the error found in it, and remand the case to the state court for further proceedings. If such were the case before us, our duty would be to reverse the judgment and remand the case to the court below to deal with the prisoner, in the face of the fact that a verdict of guilty, which was valid and legal, remains unenforced. But, under the writ of habeas corpus, we cannot do anything else than discharge the prisoner from the wrongful confinement in the penitentiary under the statute of Colorado invalid as to this case. The language of the act of congress, however, seems to have contemplated some emergency of the kind now before us. Section 761 of the Revised Statutes declares that the court or justice or judge (before whom the prisoner may be brought by the writ of habeas corpus) shall proceed in a summary way to determine the facts of the case, by hearing the testimony and argument, and thereupon to dispose of the party as law and justice require. What disposition shall we now make of the prisoner, who is entitled to his discharge from the custody of the warden of the penitentiary under the order and judgment of the court, because, within the language of section 753, he is in custody in violation of the constitution of the United States, but who is, nevertheless, guilty, as the record before us shows, of the crime of murder in the first degree? We do not think that we are authorized to remand the prisoner to the custody of the sheriff of the proper county, to be proceeded against, in the court of Colorado which condemned him, in such a manner as they may think proper, because it is apparent that while the statute under which he is now held in custody is ex post facto law, in regard to his offense, it repeals the former law, under which he might otherwise have been punished, and we are not advised whether that court possesses any power to deal further with the prisoner or not. Such a question is not before us, because it has not been acted upon by the court below, and it is neither our inclination nor our duty to decide what the court may

or what it may not do in regard to the case as it stands. Upon the whole, after due deliberation, we have come to the conclusion that the attorney general of the state of Colorado shall be notified by the warden of the penitentiary of the precise time when he will release the prisoner from his custody under the present sentence and warrant, at least ten days beforehand, and after doing this, and at that time, he shall discharge the prisoner from his custody; and such will be the order of this court."

In this case Christian has paid the fine imposed upon him, and, to that extent, satisfied the judgment. I cannot tell, under this state of case, whether the court which tried him has power to resentence him; and happily, under this decision in the Medley Case, I am relieved of deciding that question, as that court has never determined it. That case is very much like this, except that Medley was in the jurisdiction where he was tried, and there was no necessity for an order for his removal.

Coleman v. Tennessee, 97 U. S. 511, is another case affording some light. Coleman had been tried and convicted of murder by a military court-martial in Tennessee. In some way the military authorities lost control of him, and he was indicted for the same murder in the criminal court of Knox county, Tenn., for which he had been convicted by the military court-martial. He pleaded in that court his former conviction before a military court-martial. His plea was held bad. He pleaded "Not guilty," and was tried and convicted again for the same murder, and sentenced to death. He appealed to the supreme court of Tennessee. Pending the appeal he, sued out a writ of habeas corpus before the circuit court of the United States for the Eastern district of Tennessee. That court ordered his release. A copy of the judgment of the circuit court was presented to the supreme court of Tennessee, and a motion made to discharge Coleman. The supreme court of Tennessee denied the motion. The case was then carried to the supreme court of the United States, and there the judgment of the supreme court of Tennessee was reversed. The court, through Mr. Justice Field, delivering the opinion, said:

"It follows from the views expressed that the judgment of the supreme court of Tennessee must be reversed, and the cause remanded, with directions to discharge the defendant from custody by the sheriff of Knox county on the indictment and conviction for murder in the state court. But as the defendant was guilty of murder, as clearly appears, not only by the evidence in the record in this case, but in the record of the proceedings of the court-martial, —a murder committed, too, under circumstances of great atrocity,—and as he was convicted of the crime by that court, and sentenced to death, and it appears by his plea that said judgment was duly approved, and still remains without any action having been taken upon it, he may be delivered up to the military authorities of the United States, to be dealt with as required by law."

See, also, In re Bonner, 151 U. S. 243, 14 Sup. Ct. 323.

. But in this case it sufficiently appears that the petitioner was in the same district where the offense was committed, and there was no occasion for any order of removal. I am inclined, however, to the opinion that, under section 761 of the Revised Statutes of the United States, this court might make an order of removal. It is not, however, clear. I prefer to rest the question on another section of the statute, which I think is clear. I refer to section 716 of the Revised Statutes of the United States, which is as follows:

"The supreme court and the circuit and district courts shall have power to issue writs of scire facias. They shall also have power to issue all writs not specifically provided for by statute, which may be necessary for the exercise of their respective jurisdictions, and agreeable to the usages and principles of law."

Under this statute, I think the judge of the Central district of the Indian Territory has the power to issue his warrant, addressed to the marshal of the Western district of Arkansas, to arrest Christian, and to send an officer here to take him back to that court, to be dealt with as law and justice may require. This view is sustained by the Case of Oaksmith, 11 Op. Attys. Gen. U. S. 127; Randolph's Case, 2 Op. Attys. Gen. U. S. 564; 2 Moore, Extrad. § 540; Stanton Case, Id. § 541. This last case is precisely in point, and I copy the section, which is as follows:

"Escape of Federal Convict under Sentence. I am indebted to John Ruhm, Esquire, United States district attorney of the Middle district of Tennessee, for the following interesting case: In the summer of 1889 one A. A. Stanton, who had been convicted of an offense against the revenue laws, and sentenced to undergo a term of imprisonment in the jail of Williamson county, in that district, escaped from prison, and fled to Texas. Upon the application of Mr. Ruhm, Judge Key, of the Middle district of Tennessee, issued a capias to the United States marshal of the Northern district of Texas, at Dallas, for the fugitive's arrest and return. When the marshal received the capias he consulted the United States district attorney at Dallas, who advised that he could not execute it, on the ground that, after passing sentence, the power of the trial court over the prisoner ceased, and could not again be exerted save through the medium of a writ of habeas corpus, or some such remedial writ; the execution of the sentence and the place of confinement being matters of executive control, subject to such limitations as were prescribed by statute. He deemed, however, the recitals in the capias as sufficient to justify the making of a complaint de novo; and, on a warrant issued by a United States commissioner upon such a complaint, Stanton was arrested and committed to await the orders of the attorney general. On the 28th of August, 1889, Mr. Ruhm addressed a communication on the subject to the attorney general, with a comprehensive argument, which is given below. Prior to this the marshal of the Middle district of Tennessee, by direction of the attorney general, sent a deputy to Texas to identify Stanton and bring him back to Tennessee, but the marshal at Dallas refused to deliver him up in the absence of a warrant of removal from the judge of the Northern district of Texas. Early in September, 1889, however, the capias was executed. The Texas marshal to whom it was directed arrested Stanton upon it, and he was brought back to Tennessee, without any warrant of removal from the Texas court, by the deputy marshal sent to receive him, who returned the capias to the clerk of the court in the Middle district."

It was the argument of Mr. Ruhm which finally satisfied me of the law of this case, and, for the benefit of those who may not have access to Moore on Extradition, I append it in a footnote to this opinion.

It may be said that section 716 only applies to district and circuit courts of the United States, and that the judge of the United States court for the Central district of the Indian Territory is not such a judge. Granted. But by the second section of the act of congress providing for the appointment of additional judges of the United States courts in the Indian Territory, etc., approved March 1, 1895, the judges in that territory are given—

"The same authority in the judicial districts, to issue writs of habeas corpus and prohibition, injunction, mandamus, certiorari, and other remedial and final process as is now by law vested in the judges of the United States court in the Indian Territory, or in the circuit and district courts of the United States."

Section 16 of the act of congress approved March 1, 1889 (it being an act to establish a United States court in the Indian Territory, etc.), is as follows:

"That the judge of the court herein established shall have the same authority to issue writs of habeas corpus, injunctions, mandamus, and other remedial process, as exists in the circuit courts of the United States."

Either of these statutes, certainly the two, both of which are in force, obviate the objection suggested.

I conclude that the safe course to pursue is to hold the prisoner until due and ample notice can be given to the United States district attorney for the Central district of the Indian Territory, that he may apply for a warrant and send an officer for Christian, and that, if he fails within a reasonable time to do so, Christian be discharged. Petitioner has asked for bail. I do not think this court should grant bail, but that the question should be presented to the court in which he was convicted.

It is ordered that the clerk of this court notify the United States attorney for the Central district of the Indian Territory that the petitioner, William Christian, will be discharged, but without prejudice to the right of the United States to take any lawful measures to have the petitioner sentenced in accordance with law upon the verdict of guilty against him.

. NOTE.

This argument contains the reasons presented by Mr. Ruhm to Judge Key for the issuance of the capias, and is as follows: "Section 1014 of the United States Revised Statutes provides for the arrest of an offender against the laws of the United States in a district other than the one in which the offense was committed, and for extradition to the trial district. But this section is confined to the case of those who are charged with crime before they shall have been tried and convicted. 'They shall be sent to the district where the trial is to be had.' There is no act of congress making the escape of a prisoner convicted by a United States court an offense; and there is, moreover, no statute expressly authorizing or prescribing the mode of procedure for extradition in cases where a convicted prisoner escapes into another district. Section 5409 provides for the punishment of the marshal, deputy, or other person who voluntarily suffers a prisoner in his custody by virtue of process issued under the laws of the United States to escape. By section 5539 a prisoner convicted of an offense against the United States, and held in jail or penitentiary of a state, shall, in all respects, be subject to the same discipline and treatment as convicts sentenced by the courts of the state, and shall, while so confined, be exclusively under the control of officers having charge of the same under the laws of such state. Sections 5576 and 5577, Mill. & V. Code Tenn. 1884, make the escape of a prisoner confined in jail or penitentiary after conviction an offense against the state of Tennessee, and provide for its punishment. See, also, section 5575. Now, in the absence of an act of congress making the escape of a convict an offense against the United States, I do not see how, under section 1014, which alone refers to cases before trial and conviction, Stanton can be arrested upon a warrant de novo in Texas for having escaped from jail in Tennessee after having been convicted by the United States court in Tennessee. On the other hand, if section 5539, placing a convicted prisoner 'exclusively under the control of the officers of the state under the laws of the state,' can be construed to mean that when a convicted United States prisoner escapes from jail or penitentiary, and flees into another jurisdiction, he will have to be pursued by the state authorities under the extradition laws, we would be met by the anomalous condition that United States courts are powerless in such cases, and that the machinery of requisitions by and to the executives of the respective states would have to be put in motion on behalf of the United States. Of

course, it may be that this course might be resorted to, because we have noticed that the Tennessee statute makes the escape of a convicted prisoner an offense, and the act of congress places the prisoner under the 'exclusive control of the state officers under the laws of the state,' and there is ample provision in the laws of extradition to secure the arrest of a prisoner in that manner. But to merely state the proposition is enough to refute the idea that such a course was ever contemplated. It certainly never was considered that the United States courts should depend upon the state authorities, where one of their convicted prisoners escapes and flees into another district. In the absence of any other legislation, taking my position to be correct that section 1014 does not apply, it would indeed be a troublesome question to deal with. But upon examination we find an act of congress, embraced in section 716, Rev. St. U. S., which provides as follows: 'Courts have power to issue all writs not especially provided for by statute, which may be necessary for the exercise of their respective jurisdiction and agreeably to the usages and principles of law.' I submit that the power to cause the pursuit and capture of escaped convicts is 'necessary for the exercise of the jurisdiction of the United States courts,' and that the capias directed to be issued in this case was 'agreeably to the usages and principles of law,' there being no other writ or mode of procedure 'especially provided for by statute.' In this connection I would also call attention to Case of Oaksmith, 11 Op. Attys. Gen. U. S. 127: 'Either judge of a federal court has authority to issue a warrant for the arrest of a criminal, and under such a warrant he may be arrested in any part of the United States.' See, also, Randolph's Case, 2 Op. Attys. Gen. U. S. 564 (Taney, attorney general). Upon these considerations, and in the absence of any further or other authority or rule of law or practice, I submit that the capias for the arrest of Stanton was properly issued and directed to the marshal in Texas. If section 716 should be held not applicable, and if my construction of section 1014 is correct, then indeed this would be a curious casus omissus in legislation."